**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**BRIAN LEVINE, JOHN BARNETT, ARTHUR BREEN,**
**GREGORY BROWN, PATRICIA CHICHESTER, CHRIS**
**COVERT, SHELLEY DROSS, NANCY FERRANTE, ROBERT**
**GODLEY, ANNETTE GRANT, CONSTANCE GRAVES,**
**KATHRYN JAMISON, WILLIAM LIGHTBODY, MICKEY**
**MASSIANO, WILLIAM MCCARTNEY, ANDREW NIVEN,**
**DANIEL OSBORNE, MICHAEL RESNICK, ROSEMARY**
**SAWYER, LINDA SHAW, THOMAS SLOAN, JOHN STELLAR,**
**ROBIN TAYLOR, ANNETTE TOMBOLILLO, KIMBERLY VILE,**
**SARAH WASHINGTON, on behalf of themselves and all other**
**similarly situated, and the ORGANIZATION OF NEW YORK**
**STATE MANAGEMENT CONFIDENTIAL EMPLOYEES**
**(OMCE) on behalf of its members and by its Executive Director,**
**JOSEPH SANO,**

                                                        **Plaintiffs,**

        **vs.**

                                                                        **1:10-cv-1007(NAM/DRH)**

**DAVID A. PATERSON, Individually and as Governor of the State**
**of New York, THOMAS P. DINAPOLI, Individually and as**
**Comptroller of the State of new York, ROBERT L. MEGNA,**
**Individually and as Budget Director for the Division of Budget,**
**LAURA L. ANGLIN, Individually and as the former Budget**
**Director for the Division of Budget, NEW YORK STATE DIVISION**
**OF BUDGET, OFFICE OF THE STATE COMPTROLLER, NEW**
**YORK STATE DEPARTMENT OF AUDIT AND CONTROL, and**
**the STATE OF NEW YORK,**

                                                        **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

Hinman, Straub P.C.                                 John F. Black, Esq.
121 State Street                                    Joseph M. Dougherty, Esq.
Albany, NY 12207
For Plaintiffs

Hon. Eric T. Schneiderman                           Cathy Y. Sheehan
Attorney General of the State of New York           James B. McGowan
The Capitol                                         Assistant Attorneys General
Albany, NY 12224-0341
For Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge:**

                        **MEMORANDUM DECISION AND ORDER**

## I.      BACKGROUND

This action is brought pursuant to 42 U.S.C. § 1983 and 1988 by twenty-six "Management and Confidential" ("M/C") employees of the State of New York, as well as the Organization of New York State Management Confidential Employees ("OMCE"), on behalf of its members, and OMCE's Executive Director, Joseph Sano.  Plaintiffs allege their federal and state constitutional rights were violated by defendants' decision to "administratively withhold" general salary increases, performance advances, merit awards, and longevity payments (collectively "compensation increases") in 2009 and 2010 that were provided for by law in Chapter 10 of the Laws of 2008, (the "PayBill").  Plaintiffs, who are prohibited from engaging in collective bargaining, allege that defendants' provision of compensation increases to unionized state workers, some of whom occupy the same jobs as plaintiffs, violates: the Equal Protection Clause of the Fourteenth Amendment; the Due Process Clause of the Fourteenth Amendment; Contracts Clause of the United States Constitution; the New York State Constitution; and the New York State Civil Service Law.  As a result of these alleged violations, plaintiffs seek declaratory relief, an award of retroactive and/or prospective payment of the withheld compensation increases, an award of attorneys' fees, and an award of costs.

Presently before the Court is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Plaintiffs oppose defendants' motion.

## II.      AMENDED COMPLAINT

There are 26 individual plaintiffs in this case.  They occupy the following 13 positions: Senior Budgeting Analyst; Supervising Parole Officer; Senior Personnel Administrator; Park Manager I; Traffic Maintenance Engineer 2; Treatment Team Leader; Secretary 2; Chief Psychologist; Law Department Investigator; Community Outreach Specialist 2; Organizational

Developmental Specialist 3; Associate Attorney; and Nutrition Services Administrator 2. Plaintiffs claim they have union counterparts with identical job responsibilities. Each plaintiff attached an affidavit to the amended complaint stating that he or she is employed by the State of New York in a position designated Management and Confidential ("M/C" and that his or her job responsibilities are "substantially similar" to those of a similarly-titled position in a bargaining unit. For example, plaintiff Brian Levine states: "I am a Senior Budgeting Analyst, Grade 18 Competitive Class, employed by the State of New York and designated Management and Confidential." Levine avers that "[a]s a Senior Budgeting Analyst, Grade 18 my job responsibilities are substantially similar to those of the position of Senior Budgeting Analyst, SG-18, in the Professional, Scientific and Technical Negotiating Unit."

In January 2008, then Governor Eliot Spitzer signed the PayBill into law authorizing compensation increases to plaintiffs and unionized employees. The PayBill is comprised of two parts. Part A addresses "Collective Bargaining Agreement Between the State of New York and the Civil Service Employees Association, Inc. for 2007-2011". Part B addresses "Salaries and Benefits for Certain State Officers and Employees Excluded from Collective Negotiating Units for 2007-2011". According to the "Introducer's Memorandum in Support" of the Pay Bill, the purpose of Part B "is to provide the States's approximately 12,000 unrepresented employees who are prohibited from collective negotiations . . . including managerial or confidential ('M/C') employees, with benefits and increases in compensation at levels that are comparable to the benefits and increases in compensation received by the employees represented by employee organizations." Compl. Ex. 36. The PayBill authorized longevity payments to certain M/Cs, an increase in basic annual salary for M/Cs as follows: three percent effective April 2, 2007; three percent effective April 1, 2008; three percent effective April 1, 2009; and four percent effective April 1, 2010. It also authorized performance advances, merit awards, and longevity payments.

According to the amended complaint, the PayBill authorized identical compensation increases for unionized employees.

Plaintiffs allege that on or about February 19, 2009, then Governor David Paterson granted pay increases, ranging from five to forty-six percent, to twelve M/C employees in the following positions: secretary; chief of staff; assistant counsel, confidential assistant; press aide; special office assistant; legal assistant; confidential secretary; confidential aide; and confidential stenographer. The amended complaint identifies the individual employees who received these raises; none of whom are alleged to occupy the same positions as plaintiffs.

On March 25, 2009, the Division of Budget authorized the M/C payroll actions necessary to implement the compensation increases provided for in the PayBill, which were scheduled to go into effect on April 1, 2009. However, on April 2, 2009, the Director of State Operations, Dennis Whalen, issued a memorandum stating that the 2009 compensation increases would be administratively withheld:

> New York State is facing an unprecedented fiscal emergency, resulting in record budget deficits. We have asked you to administratively implement spending reduction actions, and we appreciate your continuing efforts to do so. We have continued to review our other available administrative options, including the salary increases and other payment actions for [M/C] employees.
>
> As a result of our review, we will be withholding from M/C and other unrepresented employees the April 1, 2009 three percent general salary increases and the 2009-10 performance advances, merit awards, and longevity payments. In the context of taking this action, M/C and other unrepresented employees will be exempt from the layoff actions that were announced on March 24, 2009 whenever legally permissible in light of layoffs of unionized employees.
>
> Our ability to withhold the salary increase and the other payments is pursuant to a provision of Chapter 10 of the Laws of 2008 that allows these forms of pay increases to be withheld when the Budget Director determines it is necessary "to reduce state expenditures to acceptable levels or when, in the opinion of the Director of the Budget, such increase is not warranted or is not appropriate."
>
> This determination, like others announced recently regarding the State workforce, was not made lightly. We recognize the vital roles filled by our M/C staff and the hard work they provide to serve all our residents. However, these actions are necessary to reduce the State's financial obligations in the face of a severe fiscal situation.

Compl. Ex. 43.

    According to the amended complaint, on or about April 1, 2009, the compensation

increases were implemented for unionized employees.

    In January 2010, Governor Paterson announced that the 2010 compensation increases

contained in the PayBill would again be administratively withheld from M/C employees.[1]

    The amended complaint alleges that the New York State budget for fiscal years 2009 and

2010 included funding for the payment of the compensation increases contained in the PayBill.

    Plaintiffs bring the first cause of action pursuant to 42 U.S.C. § 1983 and allege that

defendants' "administrative withholding" of compensation increases from M/C employees in

2009 and 2010, while granting such increases for unionized state employees whose job duties are

identical to plaintiffs' job duties, violates the Equal Protection Clause of the Fourteenth

Amendment to the Constitution.

    Plaintiffs bring the second cause of action pursuant to § 1983 and allege that under the

PayBill, plaintiffs' contractual guarantee of compensation increases are a protected property

interest and the "administrative withholding" violates the Due Process Clauses of the Fourteenth

Amendment and New York Constitution.

    In the third cause of action, plaintiffs allege the State of New York and plaintiffs entered

into a contract through the enactment of the PayBill and that the failure to provide for

_____

    [1]On or about April 8, 2010, Governor David Paterson announced that the state would
withhold unionized state employees' collectively negotiated four percent general salary increases
authorized by the PayBill.  The state unionized employees sought, and on or about May 28,
2010, obtained, a preliminary injunction which enjoined the New York State defendants from
enacting or implementing bills providing for, *inter alia*, unpaid furlough, a wage freeze, and a
benefits freeze on certain groups of state unionized employees.  *Donohue v. Paterson*, 715
F.Supp. 2d 306 (N.D.N.Y. 2010).  In *Donohue*, the court found that the plaintiffs, whose
organizations were party to collective bargaining agreements with the state, had established a
likelihood of success on the issue of whether the provisions authorizing unpaid furlough and a
wage and benefits freeze violated the Contracts Clause.  *Id.*

compensation increases in 2009 and 2010 constitute an impairment of contract in violation of Article I, § 10 of the Constitution - the Contracts Clause and Article I, § 6 of the New York Constitution.

In the fourth cause of action, plaintiffs allege that defendants' conduct violates the doctrine of separation of powers, in violation of the New York Constitution.

In the fifth cause of action, plaintiffs allege that defendants' conduct violates the "Equal Pay Provision" of § 115 of the New York State Civil Service Law.

## II.      DISCUSSION

### A.      Standard

Defendants move to dismiss the amended complaint pursuant to Rule 12(b)(6) for failure to state a cause of action.  To survive a Rule 12(b)(6) motion, "a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *See ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

### B.      Equal Protection

Plaintiffs assert they were denied equal protection of the law in violation of the Fourteenth Amendment of the United States Constitution because defendants had no rational basis for withholding their compensation increases while providing such increases to unionized employees performing identical jobs.  Defendants assert the distinction drawn between M/C employees, who, as a group, are not party to a collective bargaining agreement, and union employees, whose collective bargaining agreements contractually require the state to provide compensation increases, serves the legitimate governmental purpose of reducing state

6

expenditures in response to the budget crisis and is rationally related to that purpose.

It is well-settled that "unless the legislature utilizes a classification that is inherently invidious because it disadvantages a suspect class, or because it infringes upon the exercise of a fundamental right" the Court will exercise "only a limited review power over the acts of legislators." *Hayden v. Paterson*, 594 F.3d 150, 169 (2d Cir. 2010) (citing *Plyler v. Doe*, 457 U.S. 202, 216-17 (1982); *Schweiker v. Wilson*, 450 U.S. 221, 230 (1981)). The parties agree that the challenged classification in this case is subject to the "rational basis" level of scrutiny. Indeed, the amended complaint does not allege the distinction drawn between union and non-union workers in this case disadvantages a suspect class or infringes an fundamental right. Thus, to satisfy the requirements of Equal Protection the challenged classification must "rationally further[] a legitimate state interest." *Weinstein v. Albright*, 261 F.3d 127, 140 (2d Cir. 2001). "Where rational basis scrutiny applies, the Government has no obligation to produce evidence, or empirical data to sustain the rationality of a statutory classification, and instead can base its statutes on rational speculation". *Lewis v. Thompson*, 252 F.3d 567, 582 (2d Cir. 2001) (internal quotation marks and citation omitted).

### 1.    Pay Increases to Twelve M/C Employees

The Court will first address plaintiffs' claim that the award of pay increases (ranging from five to forty-six percent) to twelve M/C employees, but none to plaintiffs, violates the Equal Protection Clause. As an initial matter, these pay increases were awarded on February 19, 2009, prior to the April 2, 2009, announcement that compensation increases were going to be administratively withheld. Further, the amended complaint does not allege that, unlike plaintiffs, these employees received the three and four percent general salary increases provided for in the PayBill. Nor does the amended complaint allege that plaintiffs had the same or comparable jobs as these employees. Thus, the allegations in the amended complaint concerning pay raises to

7

twelve M/C employees who are not alleged to have jobs comparable to plaintiffs, prior to the announcement that the general salary increases would be administratively withheld, fail to state a plausible claim for relief under the Equal Protection Clause. Accordingly, the Court turns to plaintiffs' argument that the administrative withholding of compensation increases from M/C employees, but not unionized employees, violated the Equal Protection Clause.

### 2.     M/C Employees and Union Employees

Citing *Shelofsky v. Helsby*, 32 N.Y.2d 54, 60 (1973), defendants assert that the state of New York prohibits M/C employees from joining employee associations and treats them "differently than its rank and file employees because it needs a loyal and efficient cadre of supervisors and managers to perform its work separate and apart from its rank and file." Plaintiffs do not dispute the distinction drawn at this level nor do they contend their M/C designation is in error.

### a.     Legitimate Governmental Purpose

The Supreme Court has stated that courts should "not overturn such a[law] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). In this case, defendants administratively withheld compensation increases from M/C employees in response to the state's fiscal crisis and budgetary deficits. "[T]here can be no question that generating budget savings, particularly during a budget crisis, is a legitimate governmental purpose." *New York City Managerial Emps. Ass'n v. Dinkins,* 807 F.Supp. 958, 966 (S.D.N.Y. 1992) (citing *Pineman v. Fallon*, 842 F.2d 598, 602 (2d Cir. 1988)). Thus, defendants' attempts to reduce state expenditures in response to the fiscal crisis is a legitimate governmental purpose. *See F.C.C. v. Beach Comm'cs, Inc.* 508 U.S. 307, 315 (1993) ("a legislative choice is not subject to courtroom fact-finding and may be based

8

on rational speculation unsupported by evidence or empirical data.").

**b.      Means Rationally Related to the Purpose**

To establish an equal protection violation, plaintiffs must demonstrate that defendants'

distinction between M/C and union employees is "'so unrelated to the achievement of any

combination of legitimate purposes that [the court] can only conclude that [their] actions were

irrational.'" *Gregory v. Ashcroft*, 501 U.S. 452, 471 (1991).  The Supreme Court has stated that

courts should "not overturn such a[law] unless the varying treatment of different groups or

persons is so unrelated to the achievement of any combination of legitimate purposes that we can

only conclude that the legislature's actions were irrational."  *Vance*, 440 U.S. at 97.

Defendants assert that: (1) given the different statutory schemes applicable to union and

M/C employees, "it is entirely rational to treat the classes of employees differently"; (2) the

"State's fiscal crisis provided a rational basis for the Director of the Budget to withhold raises to

M/C employees."  Plaintiffs argue that because the PayBill was enacted to ensure parity in

compensation between union and M/C employees, there can be no rational basis for drawing a

distinction between them and providing, *inter alia*, compensation increases for unionized

employees but withholding them from M/C employees.

The PayBill is constructed in two parts: Part A addresses the collective bargaining

agreement between New York and the employees' association; and Part B addresses salaries and

benefits for M/C employees excluded from collective negotiating units.  New York entered a

collective bargaining agreements for the years 2007 through 2011.  These agreements and the

PayBill provide for annual compensation increases.  The PayBill does, as plaintiffs point out,

provide the same compensation increases for M/C employees.  However, Part B also provides that

such salary increases may be withheld "when, in the opinion of the director of the budget, such

withholding is necessary to . . . reduce state expenditures to acceptable levels or when, in the

opinion of the director of the budget, such increase is not warranted or is not appropriate."  Part B, § 15.1.

Plaintiffs argue that because § 8.13 in Part A[2] of the PayBill includes "similar language applicable to unionized employees" that permits the withholding of general salary increases, defendants' reliance on § 15.1 in Part B for the authorization to withhold salary increases from M/C employees is "irrational and arbitrary" because "the New York State Legislature included such language for both unionized and M/C employees."  Plaintiffs further assert that the group of M/C employees is smaller than the group of unionized employees thus demonstrating the arbitrariness of defendants' exercise of authority to withhold salary increases in order to aid in the remediation of the fiscal crisis.

There are two key distinctions between Part A § 8.13 and Part B § 15.1.  First, although Part A § 8.13 authorizes the withholding of compensation increases, it contains no authority for withholding such increases "to reduce state expenditures".  Second, unlike Part B §15.1, which places the discretion solely in the province of the director of the budget, under Part A § 8.13, there can be no withholding unless both the director of the budget *and* the "director of employee relations" believe that a salary increase is unwarranted.  Thus, reliance on Part B § 15.1 was neither irrational nor arbitrary.

Further, the decision to administratively withhold compensation increases from M/C employees bears a rational relationship to the state's legitimate interest in addressing the fiscal crisis and budgetary deficits.  The state is not bound by a collective bargaining agreement with M/C employees; indeed, as stated, the PayBill provides the director of the budget with the

---

[2]Part A, § 8.13 states: "Notwithstanding any of the foregoing provisions of this section, any increase in compensation may be withheld in whole or in part from any employee to whom the provisions of this section are applicable when, in the opinion of the director of the budget and the director of employee relations, such increase is not warranted or is not appropriate."

discretion to withhold compensation increases from M/C employees to "reduce state expenditures to acceptable levels". Thus, in deciding to administratively withhold compensation increases from M/C employees, defendants employed a pre-existing legislative classification. Moreover, as a party to collective bargaining agreements entered into prior to the onset of the state's fiscal crisis, defendants could not unilaterally withhold compensation increases they were bound to provide under the terms of the agreements.

As referenced above, plaintiffs argue that defendants "chose to exercise [withholding] authority against a smaller group of M/C employees rather than the larger group of unionized employees, resulting in substantially lower fiscal savings to the State." Plf's Mem. of Law, 9. However, "[a]s long as the classificatory scheme chosen . . . rationally advances a reasonable and identifiable governmental objective, [the court] must disregard the existence of other methods of allocation . . . ." *Schweiker*, 450 U.S. at 235. Thus, defendants rationally concluded that state expenditures could be reduced by administratively withholding compensation increases from M/C employees over whose salaries the director of the budget, pursuant to the PayBill, possessed direct discretion.

Plaintiffs further argue that the almost identical nature of their job titles and duties to those of their union counterparts, demonstrate the irrationality of defendants' decision to withhold compensatory increases from M/C employees. Indeed, plaintiffs have attached to the amended complaint affidavits in which they demonstrate that their union counterparts share substantially similar job titles and responsibilities.[3] Even assuming, however, that the classifications between

---

[3]To the extent plaintiffs rely on *Matter of Scime v. County Legislature of the County of Erie*, 90 Misc.2d 764 (1977), it is distinguishable. Here, defendants administratively withheld compensation increases from all M/C employees, not just plaintiffs. In *Flaherty v. Giambra*, 446 F.Supp.2d 153 (W.D.N.Y. 2006), the court analyzed and distinguished *Scime* as follows:

In *Scime*-as in this case-the Legislature, by resolution, had extended the benefits of the collective bargaining agreements to non-unionized employees, including

11

M/C and union employees are imperfect, this imperfection does not call into question the overall rationality of defendants' decision to administratively withhold compensation increases from M/C employees but not unionized employees.  As the Supreme Court has explained, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect." *Gregory*, 501 U.S. at 473 (internal quotation marks omitted); *see also New York City Managerial Emps. Ass'n*, 807 F.Supp. at 970 (S.D.N.Y. 1992) (finding the plaintiffs' allegations that certain city employees were improperly designated as managerial and therefore prohibited from collective bargaining did not call into question "the overall rationality of defendants' classification scheme.").  Since administrative withholding of compensation increases from M/C employees was rationally related to the legitimate governmental purpose of reducing state expenditures in the wake of a budgetary crisis, plaintiffs fail to state a plausible equal protection claim.  Accordingly, defendants' motion to dismiss the equal protection claim is granted.

**C.    Due Process**

managerial/confidential employees. In S*cime* the Legislature determined for the years 1976 and 1977 to institute a salary freeze whereby the managerial/confidential employees would not receive salary increments under the collective bargaining agreements. However, in *Scime*, the Legislature's institution of the salary freeze notwithstanding, the vast majority of managerial/confidential employees still received the scheduled salary increases. *Scime*, at 954. The plaintiffs were the only exceptions. Thus, the handful of plaintiffs were treated disparately from the remainder of managerial/confidential employees and from the unionized employees. The *Scime* court found no rational basis for the disparate treatment and therefore concluded that such treatment violated the plaintiffs' equal protection rights. In the instant case-in stark contrast- all managerial/confidential employees whose compensation was set by the Legislature were subject to the salary freeze. The salary freeze was applied even-handedly among the entire classification.

*Id*. at 161.  Plaintiffs in this case refer to twelve M/C employees who received five to forty-six percent pay raises.  However, according to the amended complaint, those employees, who do not occupy the same positions as plaintiffs, received their raises on February 19, 2009, more than a month before the decision to administratively withhold the three percent general salary increases scheduled to go into effect in April 2009.

Plaintiffs claim that defendants' administrative withholding of compensatory increases from M/C employees in 2009 and 2010 violates the Due Process Clause of the Fourteenth Amendment and the New York State Constitution.  Defendants argue that plaintiffs fail to state a plausible due process claim because they have no property interest in the compensation increases at issue.

"In order to be protected by the Constitution against the deprivation of a government benefit without due process of law, a claimant must have a 'legitimate claim of entitlement to it.'" *Leventhal v. Knapek*, 266 F.3d 64, 77 (2d Cir. 2001) (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  "The expectation of entitlement is typically derived from 'existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits.'" *Id*. (quoting *Roth*, 408 U.S. at 577) (citing *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996) ("To state a cause of action under the [D]ue [P]rocess [C]lause, a plaintiff must show that she has a property interest, created by state law, in the employment or the benefit that was removed.")).

Because the decision regarding compensation increases for M/C employees is within the discretion of the director of the budget, plaintiffs cannot establish a property interest in them. "[W]here the complained-of conduct concerns matters that are within an official's discretion, entitlement to that benefit arises only when the discretion is so restricted as to virtually assure conferral of the benefit."  *Bernheim*, 79 F.3d at 323; *see also Leventhal*, 266 F.3d at 77 (finding that the plaintiff could not "satisfy the threshold requirement that the salary increase was his 'property' because the salary increase could by law, be withheld from any employee who, in the opinion of the director of the budget, had substandard job performance or when the increase was otherwise unwarranted.").  As stated above, Part B § 15.1 provides that any compensation increases may be withheld when, in the opinion of the director of the budget, such withholding is

necessary to reduce state expenditures to acceptable levels.  Since plaintiffs fail to allege a property interest in the compensation increases, they cannot state a plausible due process claim.  Accordingly, defendants' motion to dismiss plaintiffs' due process claim is granted.

> **D.    Contracts Clause**

Plaintiffs claim that defendants' administrative withholding of compensation increases in 2009 and 2010 violated the Contracts Clause of the United States Constitution.  Defendants seek dismissal of this claim.  The Contracts Clause of the Federal Constitution provides that "[n]o state shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. art. 1, § 10, cl. 1.  "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181 (1992). The Supreme Court has held that when a state statute is alleged to create a contract, the surrender of legislative authority must be expressed in "'terms too plain to be mistaken'" *United States v. Instar Corp.*, 518 U.S. 839, 875 (1996) (quoting *Jefferson Branch Bank v. Shelly*, 1 Black 436, 446, 17 L.Ed. 173 (1862)).  The state legislation at issue in this case, the PayBill, contains no reference to contractual rights and states that compensation increases may be withheld to reduce state expenditures when, in the opinion of the director of the budget, such withholding is warranted.  In the absence of a contractual relationship, the amended complaint fails to state a plausible Contracts Clause claim.  Accordingly defendants' motion to dismiss the Contracts Clause claim is granted.

> **E.    Pendent State Claims**

Having dismissed plaintiffs' § 1983 claims, the Court declines to exercise supplemental jurisdiction over their remaining state law claims.  28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a

surer-footed reading of applicable law."); *Powell v. Gardner*, 891 F.2d 1039, 1047 (2d Cir. 1989) ("[I]n light of the proper dismissal of the § 1983 claim against [the defendants], the district court should have declined to exercise pendent jurisdiction over [the plaintiff's] state-law claims . . . ."). Accordingly, plaintiffs' state law claims are dismissed without prejudice.

**III.   CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss is granted; and it is further

**ORDERED** that plaintiffs' state law claims are dismissed; and it is further

**ORDERED** that the amended complaint is dismissed without prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Date:   September 30, 2011

Norman A. Mordue
Chief United States District Court Judge

15